FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

99 MAY 28 PM 3: 15
U.S. DISTRICT COURT
N.D. OF ALABAMA

*In re* VESTA INSURANCE GROUP,       )
INC., Securities Litigation          )       CIVIL ACTION NO.
                                     )
                                     )       CV-98-AR-1407-S
                                     )
                                     )
                                     )       **ENTERED**
                                             MAY 2 8 1999

### MEMORANDUM OPINION

Pursuant to this court's ruling allowing discovery on class certification, Vesta and Torchmark served separate discovery requests on the Florida State Board of Administrators ("FSBA"), the Pointers, Cleaners & Caulkers ("PCC"), Israel Berger and Richard Sullivan (collectively "Lead Plaintiffs"). These discovery requests purportedly seek information that relates to Lead Plaintiffs' ability to satisfy the typicality and adequacy requirements of Rule 23, F.R.Civ.P.

Most discovery disputes have been resolved amicably, but the parties are unable to agree on the production of information concerning several categories. Vesta and Torchmark have each filed a motion to compel. The motions to compel involve the following categories of information:

1. Requests for any correspondence among the groups/individuals that now comprise the Lead Plaintiffs, as well as correspondence between Lead Plaintiffs and any member of the putative plaintiff class.

2. Requests for any correspondence and all documents concerning communications between the Lead Plaintiffs and the Alabama Department of Insurance (the "DOI") regarding Vesta.



.

3.    Documents showing the Lead Plaintiffs' investment histories
during the alleged class period, including any agreements
or contracts between Lead Plaintiffs and outside money
managers.

The FSBA and the PCC, Berger, and Sullivan have filed separate
response briefs ("FSBA brief" and "PCC-B-S brief," respectively).[1]
Both the FSBA and PCC-B-S contend that the requested information is not
relevant to the issue of class certification, and in some instances,
is privileged.  The PCC-B-S and FSBA also contend that complying with
the requests would be unduly burdensome and would invade the privacy
of the Lead Plaintiffs.

## Discussion

### I.  Communications

#### Relevance to Class Certification

Despite Lead Plaintiffs' contention that communications among the
groups formerly competing for the role of lead plaintiff, between Lead
Plaintiffs and other putative plaintiffs, and between Lead Plaintiffs
and the DOI are irrelevant to class certification, the court finds that
these communications may potentially go to the issue of adequacy of
representation -- a factor this court must consider when certifying a
class under Rule 23.

In the Eleventh Circuit, a named representative satisfies the

---

[1] The PCC, Berger, and Sullivan are 3 of the 4 members that comprised
the now defunct "Vesta Group" that competed with the FSBA for the title of
Lead Plaintiff.  Judging by the separate responses filed, it appears that the
FSBA and the PCC-B-S group still see themselves as separate entities to some
degree.

adequacy requirement if (1) he, she, or it is represented by able counsel; (2) he, she, or it has no interests antagonistic to those of the remaining class members; and (3) the court is satisfied that the named representative has the personal characteristics and integrity to protect the interests of the class.   *Kirkpatrick v. J.C. Bradford,* 827 F.2d 718, 726 (11th Cir. 1987), *reh'g denied, cert. denied* (citations omitted).   Defendants contend that inquiry into the extent of communication between Lead Plaintiffs themselves, and between Lead Plaintiffs and the DOI, can indicate the extent to which Lead Plaintiffs are involved in the action and control it.   Defendants contend that this information is in turn related to whether the Lead Plaintiffs have the personal integrity, *i.e.* ability to pursue the action vigorously, necessary to adequately protect the interests of the class.

The Eleventh Circuit has expressly stated that class certification should not be denied "simply because of a perceived lack of subjective interest on the part of plaintiffs, unless their participation is so minimal that they virtually have abdicated to the attorneys the conduct of the case." *Kirkpatrick*, 827 F.2d at 727-728. As *Kirkpatrick* illustrates, the Eleventh Circuit tends to define the "adequate representation" element of Rule 23 in terms of representation by counsel, not adequate representation by a named representative. As a result, the threshold for inadequacy is high in this jurisdiction, and some courts have allowed plaintiffs who had very little knowledge of the claims asserted by the class to proceed as named

3

representatives.

In light of the Private Securities Litigation Reform Act ("the PSLRA"), however, there is a strong argument for giving the adequacy requirement more teeth. The PSLRA was designed, in part, to reduce the number of predatory lawsuits by individual investors who become "professional plaintiffs." While recognizing that private action is an essential tool to the effective enforcement of the securities laws, the PSLRA envisions greater involvement by sophisticated institutional investors acting as named plaintiffs. This vision includes lead plaintiffs -- who would ideally be institutional investors -- actually controlling the litigation rather than just going along for the ride. In securities actions, therefore, it is entirely logical, and perhaps desirable, to require more from a named representative than *Kirkpatrick* seems to contemplate. While *Kirkpatrick* was a securities case, it was decided eight years before the PSLRA was passed in 1995. Later cases decided by district courts within the Eleventh Circuit support the idea that the adequacy requirement should be applied more rigorously. *See Butterworth v. Quick & Reilly, Inc.*, 171 F.R.D. 319, 322-23 (M.D. Fla. 1997) (individual investor does not have enough familiarity with facts and issues of case to satisfy adequacy requirement despite assertions that she tracked her investments carefully and understood basis for lawsuit).

Even under the interpretation of "adequate representation" employed in *Kirkpatrick*, however, information tending to show the degree of control and involvement exercised by Lead Plaintiffs may be

4

relevant to class certification.  In *Kirkpatrick*, the Eleventh Circuit held that class certification should not be denied "<u>simply</u> because of a perceived lack of subjective interest."  *Kirkpatrick*, 827 F.2d at 727-728  (emphasis  supplied).    This  statement  leaves  open  the possibility that a lack of interest is a reason to deny class certification if combined with other reasons.  Defendants contend that such additional reasons (such as a lack of typicality) exist in this case.  The court is, at this time, unwilling to agree with the putative plaintiff class that defendants are wasting the court's time on the Rule 23 issues, which, according to Lead Plaintiffs, are routine.

Even *Kirkpatrick* acknowledges that a named representative's lack of interest and involvement in a class action suit render that  named representative an inadequate representative when the interest is so low that  the  named  representative  has  essentially  "abdicated  to  the attorneys the conduct of the case."  *Id*.  Defendants are entitled to discover information that will allow them to determine whether Lead Plaintiffs' alleged lack of interest and involvement rise to such a level that would justify a challenge to their ability to adequately represent the class.  The likelihood of prevailing on such an objection cannot provide grounds to deny the motion to compel.

## *Claims of Privilege*

Lead Plaintiffs contend that communications among and between themselves and other plaintiffs are protected by the attorney-client privilege and a "joint defense/prosecution" or "common interest" privilege.   As for communications between Lead Plaintiffs and the DOI,

5

PCC-B-S contends that these communications are protected by the common interest privilege because Lead Plaintiffs and the DOI were investigating a common enemy – Vesta. Lead Plaintiffs also claim that these communications are undiscoverable as attorney work product. Defendants contend that their requests seek no information that falls within the traditional attorney client privilege, from which the common interest privilege derives, nor do they seek opinions and/or mental impressions protected by the attorney work product rule.

Because claims of privilege are narrowly construed, but privileges that do legitimately exist should be respected, claims of privilege often turn on factual determinations.   Lead Plaintiffs' blanket assertions of privilege are improper.   Rule 26(b)(5), F.R.Civ.P., obligates Lead Plaintiffs to produce a privilege log that sufficiently describes the nature of the items such that defendants can determine whether they will contest a claim of privilege and such that the court can assess whether a privilege is properly invoked.   Lead Plaintiffs have not offered an adequate excuse for their failure to comply with this requirement.   They shall therefore be directed to submit a privilege log to defendants and to this court.   Lead Plaintiffs shall also be directed to submit for *in camera* review all communications sought but not heretofore produced to defendants.

## II.   Investment Histories

### Relevance

Lead Plaintiffs object to this request on the grounds that it seeks documents that are not relevant to the subject matter of this

6

action nor reasonably calculated to lead to the discovery of admissible evidence.

Defendants argue that the information is relevant to class certification and to the merits of the action. Specifically, defendants contend that the evidence goes to show typicality, and according to some courts, adequacy. Defendants explain that obtaining the investment histories of the Lead Plaintiffs will allow them to determine whether any of the Lead Plaintiffs are subject to unique defenses that make their claims atypical, or that create interests antagonistic to the class such that the Lead Plaintiffs would be inadequate representatives.

The unique defense that defendants have in mind is the possibility that some or all of the entities serving as one of the Lead Plaintiffs relied on factors other than the market when making investment decisions. Evidence that one of the entities is a sophisticated investor, for example, or that it or he invested in Vesta and Torchmark stocks after the alleged material misrepresentations were made would undercut the "fraud on the market" argument[2] advanced by the Lead Plaintiffs. Such evidence would sever the causal connection between the Lead Plaintiffs' basis for investment decisions and defendants' alleged material misrepresentations, effectively rebutting

---

[2] Plaintiffs suing under a fraud on the market theory need not prove direct causal reliance on a defendant's fraud. This theory assumes that the price of a company's stock is determined by all available material information regarding the company. Material misrepresentations affect the price of the stock. Because the price of stock is typically what an investor relies upon in making investment decisions, the causal connection between a defendant's misrepresentation and an investor's reliance is presumed *See Basic, Inc. v. Levinson*, 485 U.S. 224, 241-42 (1988).

7

the presumption of reliance inherent in the fraud on the market theory. If Lead Plaintiffs are subject to this defense while other putative class members are not, Lead Plaintiffs may be unable to satisfy the typicality requirement of Rule 23. The mere fact that this evidence will also be relevant to the merits of the action does not keep it from being relevant on Rule 23 consideration.

The authorities appear to be divided as to whether an investor's degree of sophistication exposes him, her, or it to unique defenses which could preclude a finding of typicality for class representation purposes. Courts have held that a sophisticated investor subject to unique defenses is precluded from adequately representing the class. *See Roseman v. Sports and Recreation,* 165 F.R.D. 108, 111 (M.D. Fla. 1996). Other courts have rejected the notion that a unique defense defeats typicality. Courts rejecting the unique defense argument emphasize that a class representative is not atypical simply because he, she, or it has little chance of prevailing at trial. These courts hold that consideration of a defense's effect on typicality impermissibly confuses the merits of the class representative's claim with the question of whether the putative representative satisfies Rule 23. *See CV Reit v. Levy,* 144 F.R.D. 690, 697 (S.D. Fla. 1992).

While recognizing that the latter position is not without merit, this court joins the majority of courts in the Eleventh Circuit that have held, at least implicitly, that vulnerability to unique defenses can jeopardize a party's ability to represent the class. The ultimate significance of such information in this case, of course, remains for later determination.

8

### Not Unduly Burdensome or Overbroad

Both the FSBA and PCC-B-S contend that a request for production of their investment portfolios is overbroad and unduly burdensome. To support this contention, the FSBA states that it administers $103 billion in investments in various securities. PCC states that it had over $40 million invested in various securities and managed by institutional money managers. At the May 21 hearing, however, it became evident that defendants' requests were neither overbroad nor burdensome. Lead Plaintiffs' objection based on these grounds is untenable.

### Privacy Concerns

Lead Plaintiffs contend that requiring production of investment portfolios invades their privacy. Lead Plaintiffs further contend that requiring production of this information might have a chilling effect on the willingness of future litigants to come forward and serve as class representatives in a securities case if their investment portfolios will be held out for scrutiny.

Most courts have rejected "privacy" as a grounds for objecting to production of investment history of a plaintiff, so long as the request is not so broad as to involve entities or persons not a part of the plaintiff class. For example, in In re Grand Casinos, 181 F.R.D. 615, 621 (D. Minn. 1998) the court ordered production of Lead Plaintiffs' investment histories but refused to compel production of the investment histories of the Lead Plaintiffs' family members unless the investment decisions of the family member were directly influenced by a Lead

9

Plaintiff.   Privacy concerns have also been addressed by ordering production of redacted brokerage accounts.   *See Kaplan v. Pomerantz,* 131 F.R.D. 118, 125 (N.D. Ill. 1990).

This court is not insensitive to Lead Plaintiffs' concerns, but cannot at this time determine whether such concerns outweigh defendants' legitimate need for the information.   Lead Plaintiffs shall therefore be directed to submit their investment portfolios for an *in camera* review.

## Conclusion

The court concludes that defendants' request for communications among the groups formerly competing for the role of Lead Plaintiffs, between Lead Plaintiffs and other putative class members, and between Lead Plaintiffs and the DOI seeks information sufficiently relevant to the class certification issue in this action to require a look by the court and by defendants to the extent not privileged.   Lead Plaintiffs' blanket assertions of privilege are improper.   Lead Plaintiffs shall be ordered to produce a privilege log in compliance with Rule 26(b)(5), from which the court will determine whether each asserted privilege is properly invoked.   Lead Plaintiffs shall also be ordered to submit to the court all communications not previously produced to defendants. These communications shall be the subject of an *in camera* review.

Defendants' request for production of Lead Plaintiffs' investment portfolios is also an attempt to discover information the court deems relevant to the issues of class certification and to the merits of this action.   Lead Plaintiffs' objection based on burdensomeness is without

10

merit.   The court is, however, sensitive to the private nature of the information requested and therefore shall order Lead Plaintiffs to submit the investment portfolios for an *in camera* review.

An appropriate order will be separately entered.

DONE this _28_ day of May, 1999.


                                        WILLIAM M. ACKER, JR.
                                        UNITED STATES DISTRICT JUDGE

11